**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:   (619) 343-2789

**Counsel for Plaintiff**

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW HARRIS, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>WOODBOLT DISTRIBUTION, LLC,<br><br>                Defendant. | Case No: **'19CV2493 JM   MDD**<br>Pleading Type: Class Action<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>**BUS. & PROF. CODE §§17200** *et seq.,*<br>**CIV. CODE §§ 1750** *et seq.,* **and**<br>**15 U.S.C. §§ 2301,** *et seq.*<br><br><u>Demand for Jury Trial</u> |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................ 1

II.    NATURE OF THE ACTION .................................................................... 1

III.   PARTIES ................................................................................................ 2

IV.    FACTUAL ALLEGATIONS ................................................................... 2

    A.   The Composition of Cavalier ............................................................. 4

    B.   Specific Misrepresentations and Deceptive Acts ............................... 7

    C.   Cavalier is a Misbranded Drug .......................................................... 7

V.     RELIANCE AND INJURY ..................................................................... 9

VI.    CLASS ACTION ALLEGATIONS ........................................................ 12

VII.   CAUSES OF ACTION ........................................................................... 13

VIII.  PRAYER FOR RELIEF .......................................................................... 18

IX.    JURY DEMAND .................................................................................... 19

1

Plaintiff Andrew Harris, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Woodbolt Distribution, LLC, which does business in California as Nutrabolt ("Nutrabolt" or "Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.   This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class defined herein reside in states other than the state of which Defendant resides.

2.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff resides in this District; has suffered  injuries as a result of Defendant's acts in this district; many of the acts and transactions giving rise to this action occurred in this District; and because Defendant is authorized to conduct business in this District, and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of Cavalier Gentleman's Product in this District; and is subject to personal jurisdiction in this District.

## II.   <u>NATURE OF THE ACTION</u>

3.   Defendant Nutrabolt is a Delaware corporation with its principal place of business in Austin, Texas which sells "Cavalier Gentlemen's Product" ("Cavalier" or the "Product"), a purported over-the-counter aphrodisiac.

4.   Defendant claims Cavalier has aphrodisiac properties, suggesting it be taken "daily" and "30 to 45 minutes prior to sexual activity" for "sexual health."

5.   However, none of the ingredients in Cavalier, individually or in combination, can provide such benefits. Several of the ingredients the FDA has singled out by name was being unlawfully used in purported herbal aphrodisiacs.

6.   Plaintiff Andrew Harris read, believed, and relied upon Defendant's unlawful and misleading claims in deciding to purchase Cavalier.

7.   Plaintiff brings this action challenging Defendant's claims relating to Cavalier on behalf of himself and all others similarly situated under California's Unfair Competition Law,  and Consumer Legal Remedies Act, and the federal Magnuson Moss Warranty Act.

8.   Plaintiff seeks order compelling Nutrabolt to (1) cease marketing Cavalier using the deceptive and unlawful tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Defendant has been unjustly enriched, and to and (4) and destroy all misleading and deceptive material.

9.   Plaintiff further seeks actual and punitive damages, interest, fees, and costs.

### III.   PARTIES

10.   Defendant Nutrabolt is a Delaware corporation with its principal place of business located at 4407 Monterey Oaks Blvd, Ste. 150 Austin, TX 78749.

11.   Defendant Nutrabolt manufactures, distributes, markets, and sells Cavalier.

12.   Cavalier is sold and marketed throughout California.

13.   Plaintiff Andrew Harris is a resident of San Diego, California who purchased Cavalier for personal and household consumption.

### IV.   FACTUAL ALLEGATIONS

14.   Nutrabolt has distributed, marketed, and sold Cavalier throughout California and the United States, both online and at retail store locations.

15.   Cavalier is offered for sale in a bottle containing 60 tablets and retails for approximately sixty dollars.

16.   Defendant prominently labels its product as supporting "Sexual Health" when "30 to 45 minutes prior to sexual activity," implying that the Product's ingredients will assist with and improve performance, despite the fact Cavalier is not effective as an aphrodisiac. This instruction mimic the instructions on FDA-approved E.D. drugs:

a.  FDA-approved Cialis's Proscribing Information states to either take "Once Daily" or "Prior to anticipated sexual activity"

b. FDA-approved Levitra's labeling likewise states "Take 1 LEVITRA tablet about 1 hour (60 minutes) before sexual activity."

c. FDA-approved Staxyn also has Prescribing Information stating it should be taken "approximately 60 minutes before sexual activity."

d. FDA-approved Stendra's labeling states it should be taken "approximately 30 minutes before sexual activity."

e. FDA-approved Viagra's label states it should be taken "approximately 1 hour before sexual activity."



17.    Defendant also falsely advertised Cavalier as follows:

"A gentleman's passion and his lust for expression shouldn't dull with time.

Intimacy and sexual vitality add to quality of life and should be upheld at every age. Cavalier's Daily Sexual Health Support is for the gentleman who wants to

3

enjoy the finer things in life. This supplement contains ingredients in a potent blend to promote sexual health and improved blood flow."

and

"This supplement contains ingredients in a potent blend to promote libido, erectile health and blood flow."

and

"Velvet Bean Mucuna pruriens is a naturally occurring ingredient included in the Cavalier Sexual Health Blend that has been used traditionally to promote health and well-being, and has been shown to increase libido."

### A.    __The Composition of Cavalier__

18.    Cavalier consists of a blend of small amounts of extracts from herbs, roots, and other organic substances, some of which are purported to have an effect on the human body.

19.    The figure below shows the ingredients in Cavalier:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18      20.    Cavalier, by means of its ingredients, claims to support "Sexual Health" and
19  suggests to consumers that it is effective as an aphrodisiac drug product.

20      21.    This, however, is false and misleading because none of the ingredients in
21  Cavalier, individually or in combination, increase male sexual performance or are effective
22  as an aphrodisiac.

23      22.    Some of the ingredients in Cavalier include Velvet Bean seed extract,
24  Epimedium aerial parts extract, Maca root extract, Muira Pauma root extract, Maritime
25  Pine bark extract, Ginkgo leaf extract, Yohimbe bark extract, Velvet Bean, Epimedium,
26  Maca, Mui, Muira Puama, and Tribulus Terrestris.

27      23.    None of the ingredients in Cavalier, individually or in combination, however,
28  improve sexual health or performance.

CLASS ACTION COMPLAINT

24.    Further, consuming such random herbs and herbal extracts presents a risk of an allergic or other adverse reaction without any offsetting benefit.

**B.    Cavalier's Yohimbe Content Poses Grave and Undisclosed Risks to Human Health**

25.    The Yohimbe extract in Cavalier presents several risks not stated on the Product's label:

26.    The National Institute of Health ("NIH") strongly cautions that sufferers of anxiety and/or depression should not use yohimbe: "Yohimbe might bring out manic-like symptoms in people with bipolar disorder or suicidal tendencies in individuals with depression."

27.    The NIH further warns against yohimbe for use by individuals suffering from diabetes, because it may "interfere with insulin and other medications used for diabetes and cause low blood sugar." Id.

28.    Like early antidepressant drugs, yohimbe extracts can cause serious and in some cases life-threatening conditions when ingested with any of the many foods containing significant amounts of the monoamine tyramine.

29.    Both yohimbe and these first generation antidepressants are referred to as Monoamine Oxidase Inhibitors ("MAOIs").

30.    MAOIs, by inhibiting monoamine oxidase, are also responsible for the reduction in the breakdown of tyramine, an amino acid in many foods. The retarding of this process by MAOIs leads to a build-up of tyramine in the body, causing high blood pressure and severe hypertension.

31.    The dangerous combination of MAOIs and tyramine can also result in stroke and cardiac arrhythmia.

32.    As a result, those prescribed MAOIs are warned to avoid these and other types of tyramine-heavy foods.

33.    This warning, from the National Institute of Health U.S. Library of Medicine, is typical:

CLASS ACTION COMPLAINT

You may experience a serious reaction if you eat foods that are high in tyramine during your treatment with phenelzine [an MAOI, brand name: "Nardil"]. Tyramine is found in many foods, including meat, poultry, fish, or cheese that has been smoked, aged, improperly stored, or spoiled; certain fruits, vegetables, and beans; alcoholic beverages; and yeast products that have fermented. Your doctor or dietitian will tell you which foods you must avoid completely, and which foods you may eat in small amounts. You should also avoid foods and drinks that contain caffeine during your treatment with phenelzine. Follow these directions carefully. Ask your doctor or dietitian if you have any questions about what you may eat and drink during your treatment.

34.     Even small amounts of yohimbe may cause a dangerous spike in blood pressure.

35.     Of significant concern is a study published in 2008, which, in a yearlong surveillance study of dietary supplement-related poison control center calls, found that yohimbe products accounted for almost a fifth of all exposures to dietary supplements that led to negative symptoms, despite being a very small percentage of dietary supplement sales.[4]

36.     These symptoms include: anxiety, tremulousness, diaphoresis, hypertension, palpitations, headache, chest pain, tachycardia, shortness of breath, stroke, dizziness, agitation, and abnormally dilated pupils.

**C.     Cavalier is a Misbranded Drug**

37.     The claims described above—"Sexual Health;" "Take One Serving (3 Capsules) Daily and/ or 30 to 40 Minutes Prior to Sexual Activity"; "increase libido;" "promote sexual health and improved blood flow;" and "promote libido, erectile health and blood flow"—both alone and taken together as a whole, show that Cavalier is an unapproved aphrodisiac, as defined by the FDA's regulation on this topic.

38.     Pursuant to 21 C.F.R. § 310.528 any OTC drug product that is labeled,

---

[4] C. Haller et al., *Dietary Supplement Adverse Events: Report of a One-Year Poison Center Surveillance Project*, 4 J. Med. Toxicology 84 (June 2008).

CLASS ACTION COMPLAINT

represented, or promoted for use as an aphrodisiac, like Cavalier, is regarded as a "new drug" within the meaning of section 201(p) of the FDCA (located at 21 U.S.C. § 355(p)).

39.    The FDCA requires any new drug to have an application approved by the Food and Drug Administration ("FDA") before the drug can be marketed to the public, and further that the drug's label be approved by the FDA prior to marketing or selling the drug to the public. *See*, *generally*, *id.*; 21 U.S.C. §§ 355(a), (b) [New Drug Application], (j) [Abbreviated New Drug Application, for generic drugs].

40.    Cavalier violates Section 505(a) of the FDCA since the adequacy of the labeled directions for its "aphrodisiac" uses has not been approved by the FDA prior to the Product being marketed to the public (*see* 21 U.S.C. § 355(a)).[5] Accordingly, the Product is misbranded under section 502(f)(1) of the FDCA (located at 21 U.S.C. § 352).

41.    Further, Cavalier includes Mucuna pruriens, Epimedium sagittatum, Lepidium meyenii, Ptychopetalum olacoides, Pinus pinaster, Ginkgo biloba, and Pausinystalia yohimbe, none of which improve sexual health or performance.

42.    The FDA bars manufacturers from making false, misleading label claims which are unsupported by scientific evidence. *Id.* Thus, based on the evidence currently available, any OTC drug product containing ingredients for use as an aphrodisiac, including Cavalier, cannot be generally recognized as safe and effective, and instead are misbranded new drugs. *See id.*

43.    Although Defendant labels Cavalier as a "supplement," its ingredients and labeling mean it is a misbranded, unlawful new aphrodisiac drug.

44.    Federal regulations prohibit Defendant from making "disease claims" on dietary supplements. *See* 21 C.F.R. § 101.93. Disease claims are generally described as statements which claim to diagnose, mitigate, treat, cure or prevent disease where the statements claim "explicitly or implicitly, that the product . . . Has an effect on the

---

[5] In addition to proving effectiveness, the manufacturer of a new drug must also prove the drug's safety, sufficient to meet FDA standards. 21 U.S.C. § 355(d).

CLASS ACTION COMPLAINT

characteristic signs or symptoms of a specific disease or class of diseases, using scientific or lay terminology." *Id.* The labeling of Cavalier was designed to and actually does convey that the product treats and prevents erectile dysfunction and diminished libido.

45.    In addition, Defendant violates 21 U.S.C. § 343(r)(6), which requires, among other things, that all structure function claims be truthful and not misleading, based on competent scientific evidence, and prominently provide a specified disclaimer explaining that the FDA has not evaluated the structure function claim. *See also* Cal. Health & Safety Code § 110670 (incorporating requirements of 21 U.S.C. § 343(r)(6)).

46.    California Health and Safety Code, Division 104, Part 5, contains the Sherman, Food, Drug, and Cosmetic Law ("Sherman Law"). Cal. Health & Safety Code §§ 109875-111915. The Sherman Law imposes identical requirements to the federal FDCA: "All nonprescription drug regulations and regulations for new drug applications under the FDCA are the regulations of this State." Cal. Health & Safety Code §§ 110110-110111, 110115. The Sherman Law also defines a "drug" as "any article other than food, that is used or intended to affect the structure or any function of the body of human beings or any other animal." Cal. Health & Safety Code § 109925(c).

47.    In effect, the Sherman Law requires that Federal Law is followed, and where it is not, such a violation of Federal law also violates the Sherman Law.

48.    The Sherman Law is explicitly authorized by the FDCA because it imposes identical requirements. 21 U.S.C. § 343-1.

49.    Because Cavalier has not been approved as a new drug, it is an unlawful and misbranded unapproved aphrodisiac drug under 21 C.F.R. § 310.528.

50.    A reasonable consumer, members of the Class, and Plaintiff would not have purchased Cavalier if they had known that the Product was ineffective, unsafe, and illegal pursuant to California's Sherman Law and FDA regulations.

51.    Cavalier is unsafe, ineffective, and illegal, and had a value of $0.00.

## V.    ADDITIONAL TOLLING ALLEGATIONS

52.    Defendant was aware that Cavalier did not deliver its advertised benefits at all

9

times during the entire Class Period.

53.  Defendant made these claims knowing that they were false and illegal in order to deceive its customers and increase its sales.

54.  Defendant had a continuing and affirmative moral and legal obligation to correct its false and illegal aphrodisiac drug claims but intentionally choose to ignore its obligation to do so.

55.  Class members had no duty and no reason to inquire as to whether claims made on packaged supplement labels like Cavalier were true but were rather entitled to rely on their accuracy. They likewise had no reason to disbelieve a prominent statement on a product label was false. Nor did they have a reason to suspect the aphrodisiac claims were unauthorized. Mr. Harris has no training on the interpretation of the regulations relating to dietary supplements promulgated by the FDA, and reasonably relied on the assumption that Defendants would not manufacture and GNC not sell a product with prominent, false, unauthorized, and unlawful statements about Cavalier. The complexity of the regulations is such that Mr. Harris lacked the means to discover their falsehood and illegality until he discussed the issue with his counsel on October 29, 2019.

56.  Because of the fraudulent concealment of the fact that Cavalier was a safe and effective aphrodisiac when it was promoted as such, class members are unaware even now of their claims against Defendant.

57.  Reasonable consumers, including Plaintiff, had no reason to suspect Defendant's unfair competition and violations of federal and state law prohibiting the sale of unapproved aphrodisiac drugs.

58.  Defendants owed a special duty of honesty toward Plaintiff and all Class Members, akin to a fiduciary duty, which they violated by falsely and unlawfully

CLASS ACTION COMPLAINT

manufacturing and selling Cavalier with a false and unlawful claims.

59.    California's strong public policy against consumer fraud applies with special force where, as here, the fraud concerns a potentially dangerous, unapproved new drug. This fraud and its harms are described in detail herein, and in even more detail in the referenced scientific studies quoted and cited. During the entire class period, Defendant was aware that their acts were oppressive and cruel, causing economic injury, and consciously continued these acts for years while knowing the extent of the harm they were causing. Equity and the public policy of California, embodied in its statutes jointly demand, in such circumstance, that laches and tolling cannot apply in such a way to permit Defendants to continue to enjoy the fruits of their intentional, cruel, fraudulent, oppressive, and unlawful acts.

## VI.    <u>RELIANCE AND INJURY</u>

60.    Mr. Harris purchased Cavalier from the website of the retailer GNC on May 21, 2016.

61.    When purchasing Cavalier, Mr. Harris and the Class were seeking a product that had the aphrodisiac qualities promised on the Product's label and product website .

62.    When deciding to purchase Cavalier Plaintiff read and relied on the deceptive and unlawful claims described *supra*.

63.    Plaintiff would not have purchased the Product absent Nutrabolt's false and misleading claims. Nor would he have purchased Cavalier had he known it is misbranded under California and Federal law.

64.    For these reasons, Cavalier has no value and should not be consumed.

65.    Instead of receiving a product that had actual beneficial qualities, the Product Plaintiff and the Class received was one which does not provide the claimed benefits.

66.    Plaintiff and the Class lost money as a result of Defendant's deceptive claims and practices in that they did not receive what they paid for when purchasing Cavalier.

CLASS ACTION COMPLAINT

67.    Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Product.

68.    The senior officers and directors of Defendant allowed Cavalier to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## VII.    CLASS ACTION ALLEGATIONS

69.    Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated (the "Class"). The Class is defined as:

> All persons in the United States (excluding officers, directors, and employees of Defendant) who purchased Cavalier primarily for personal, family, or household use, and not for resale since January 1, 2015.

70.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

71.    Questions of law and fact common to Plaintiff and the Class include:

a)    whether Defendant contributed to, committed, and/or is responsible for the conduct alleged herein;

b)    whether Defendant's conduct constitutes the violations of law alleged herein;

c)    whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

d)    whether Class members are entitled to compensatory, injunctive, and/or other equitable relief.

72.    Plaintiff's claims are typical of Class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

73.    Absent Defendant's deceptive claims, Plaintiff and the Class members would not have purchased Cavalier.

74.    Plaintiff will fairly and adequately represent and protect the interests of the

Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation.

75.     The Class is sufficiently numerous, as the Class contains thousands of individuals who purchased Cavalier.

76.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

77.     Questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

78.     Defendant has acted on ground applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

79.     Class treatment is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

## VIII.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Unfair Competition Law, Unlawful Prong**

**Cal. Bus. & Prof. Code §§ 17200 et seq.**

80.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

81.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

82.     The business practices and omissions of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the False Advertising Law, the Consumer Legal Remedies Act, and breaches California's express and implied warranty provisions and Magnuson Moss Warranty Act.

83.     Defendant's conduct is further "unlawful" because it violates the FDCA and its implementing regulations in the following ways:

a) Defendant's deceptive statements violate 21 U.S.C. § 343(a) and § 352, which deem a food or drug (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular";

b) Defendant's deceptive statements are *per se* false and misleading because the FDA has ruled there is a lack of adequate data to establish general recognition of the safety and effectiveness of any of the ingredients in Cavalier, or any other ingredient, for OTC use as an aphrodisiac; and labeling claims for aphrodisiacs for OTC use are "either false, misleading, or unsupported by scientific data." 21 C.F.R. § 310.528(a);

c) Defendant's deceptive statements violate 21 C.F.R § 310.528(b), which mandates that any OTC product that is labeled, represented, or promoted for use as an aphrodisiac, like Cavalier, is regarded as a "new drug" within the meaning of 21 U.S.C. § 355(p), but Defendant does not have new drug approval for Cavalier or its labeling, as required under the FDCA and its implementing regulations. Accordingly, Defendant's Product is misbranded under section 502(f)(1) of the FDCA;

d) Defendant violates 21 C.F.R. § 101.93 because Cavalier's labeling leads reasonable consumers to believe that the Product can treat or cure maladies including premature ejaculation, erectile dysfunction, and diminished libido;

e) Defendant's Product also violates the FDCA because, as an unapproved new drug and aphrodisiac, Cavalier is not generally recognized as safe and effective in the absence of a new drug application as set forth in the FDCA and its implementing regulations. 21 C.F.R. § 310.528(a).

84. Defendant's conduct is further "unlawful" because it violates the California Sherman Food, Drug, and Cosmetic Law, see Cal. Health & Safety Code § 109875-111900, which incorporates the provisions of the FDCA. See id. §§ 110110-110115.

---

14

CLASS ACTION COMPLAINT

85.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices, and to commence a corrective advertising campaign.

86.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product, which were acquired through its unlawful acts of unfair competition.

## SECOND CAUSE OF ACTION

### Unfair Competition Law, Unfair and Fraudulent Prongs
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

87.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

88.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

89.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein also constitute "unfair" business acts and practices under the UCL in that their conduct is immoral, unethical, unscrupulous, or substantially injurious to consumers, offends public policy by seeking to profit from male vulnerability to false or deceptive virility or aphrodisiac claims, and the utility of their conduct, if any, does not outweigh the gravity of the harm to Defendant's victims.

90.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices under the UCL in that Defendant's claims are false, misleading, and have a tendency to deceive the Class and the general public, as detailed herein.

91.     Defendant profited from its sales of the fraudulently, falsely, and deceptively advertised Product to unwary consumers.

92.     In accordance with Cal. Bus. & Prof Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unfair acts and practices and to commence a corrective advertising campaign.

CLASS ACTION COMPLAINT

93.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product, which were acquired through acts of unfair and fraudulent competition.

### THIRD CAUSE OF ACTION

### Consumer Legal Remedies Act

### Cal. Civ. Code §§ 1750, *et seq.*

94.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

95.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

96.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Defendant's Product for personal, family, or household purposes by Plaintiff and Class members, and violated and continue to violate the following sections of the CLRA:

a)     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b)     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c)     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d)     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

97.     Defendant profited from its sale of the falsely, deceptively and unlawfully advertised Product to unwary consumers.

98.     As a result, Plaintiff and the Class have suffered irreparable harm; and seek restitution and actual damages in the amount of the total retail sales price of the Product sold throughout the Class period to all Class members, punitive damages in an amount sufficient to deter and punish, injunctive relief in the form of modified advertising and a

corrective advertising plan, a complete prohibition on Cavalier's sale, or the sale of any other unlawful unapproved aphrodisiac drug.

99.   Pursuant to California Civil Code § 1782, on November 1, 2019, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to the Product and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Nutrabolt received Plaintiff's written notice on November 4, 2019.

100.   Defendant's wrongful business practices regarding the Product constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Product has characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

101.   As Defendant failed to implement remedial measures, Plaintiff and the Class seek injunctive relief under Civil Code § 1782(d), enjoining the above described wrongful conduct by Defendant, as well as, actual and punitive damages for their CLRA claims.

## FOURTH CAUSE OF ACTION

### Violation of the Magnuson-Moss Warranty Act

### 15 U.S.C. §§ 2301, *et seq*. ("MMWA")

102.   Plaintiff repeats, re-alleges, and incorporates the allegations contained in the paragraphs elsewhere in this Complaint, as if fully set forth herein.

103.   Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

104.    Plaintiff and the Class assert all state law warranty claims arising under the laws of the State of California, as allowed under section 2310(d) of the MMWA.

105.   Defendant's Product is a consumer product as defined in 15 U.S.C. § 2301(1), which costs more than $5.00.

106.   Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

107.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4), (5). In connection with the sale of the Product, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6)(A), by making representations regarding the Product's efficacy.

108.    In fact, the Product does not conform to the Express Warranties because the Express Warranties are false and/or deceptive, whereby Defendant breached the Express Warranties made to Plaintiff and the Class.

109.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product absent the Express Warranties, which formed part of the basis of the bargain.

110.    By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and Class members.

111.    Plaintiff and the Class seek damages, equitable relief, and attorney's fees and costs pursuant to 15 U.S.C. §§ 2310(d)(1), (2).

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.    An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff Andrew Harris and his undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.    An Order compelling Defendant to destroy all misleading and deceptive advertising materials, labels, and unapproved new drugs;

C.    An Order requiring Defendant to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

CLASS ACTION COMPLAINT

1    D.     An award of pre-judgment and post-judgment interest;

2    E.     An award of attorney fees and costs;

3    F.     Actual and punitive damages of at least $5 million;

4    G.     Such other and further relief as this Court may deem just, equitable or proper.

5

6                 **X.**     **JURY DEMAND**

7       Plaintiff hereby demands a trial by jury for his claim for damages and punitive

8 damages, and consents to a bench trial for his claims in equity.

9

10 DATED: December 30, 2019            Respectfully Submitted,

11                                   /s/ Gregory S. Weston

12                                   **THE WESTON FIRM**

13                                   GREGORY S. WESTON
                                  1405 Morena Blvd., Suite 201

14                                   San Diego, CA 92110
                                  Telephone:   (619) 798-2006

15                                   Facsimile:    (619) 343-2789

16                                   **Counsel for Plaintiff**

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT